**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**

---

In the Matter of the Arbitration between

Re: 16 148 Y 00590 09
    AC Technology, Inc., Michael Byrd and Earle Munns, Jr.,
      Claimants and Counter-Respondents

    and

Bank of America, N.A.,
    Respondent and Counter-Claimant.

---

## INTERIM AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreements entered into pursuant to the (1) Credit and Security Agreement between AC Technology, Inc. ("AC Technology") and MB Security Corporation ("MB Security") and Bank of America, N.A. ("Bank of America" or the "Bank"), dated June 30, 2008 (the "Credit Agreement"), (2) Continuing and Unconditional Guaranty provided by Earle D. Munns, Jr. to Bank of America, N.A., dated June 30, 2008 (the "Munns Guaranty"), and (3) Continuing and Unconditional Guaranty provided by Michael A. Byrd to Bank of America, N.A., dated June 30, 2008 (the "Byrd Guaranty"), and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby AWARD in this Interim Award, subject to entry of a Final Award as further provided for herein, as follows:

I. BACKGROUND

This arbitration proceeding was initiated by Claimants/Counter-Respondents during related judicial proceedings initiated by Bank of America against Claimants/Counter-Respondents in the federal district court in Alexandria, Virginia. Although Claimants/Counter-Respondents claimed the amount of $4,733,916.31 in their arbitration demand, they did not pay the required AAA Proceed Fee following due notice and opportunity. As a result, Claimants/Counter-Respondents were notified by AAA on November 20, 2009 that their claim had not been properly filed and therefore administration of the claim would not continue. Accordingly, no claims of Claimants/Counter-Respondents have been considered or heard in this arbitration proceeding.

On September 17, 2009, Bank of America filed its answering statement and counterclaim request with the AAA. In that filing it incorporated by reference the Verified Complaint For Breach of Contract, Fraud and Conversion (the "Complaint") that it had filed against the Claimants/Counter-Respondents in the court proceeding. Bank of America has pursued those claims in this arbitration proceeding and has been represented by outside counsel.

Claimants/Counter-Respondents were not represented by counsel until after the April 19, 2010 hearing on the merits (the "Hearing"). Prior to that time, they represented themselves pro se through Mr. Munns who, although a non-practicing attorney, at the Hearing called and questioned a witness, cross-examined the Bank's witnesses and introduced documents which were admitted into the record.

As Claimants/Counter-Respondents did not comply with their discovery obligations in this proceeding, on March 5, 2010 (incorporating my e-mail ruling of February 24, 2010) I granted a motion to compel filed by Bank of America. It appears that there was thereafter some, but not complete, compliance by Claimants/Counter-Respondents with that order. I indicated in my order that I would consider the imposition of appropriate sanctions in this matter and on April 7, 2010, as a result of claimed non-compliance by Claimants/Counter-Respondents with my order, Bank of America filed a Motion to Preclude Claimants/Counter-Respondents from Introducing Evidence at the Hearing. That motion was considered during an April 14, 2010 conference call hearing with the parties. As a result of that hearing, and representations made by Mr. Munns relative to compliance with my order, I deferred ruling on the Bank's motion but agreed to further consider it at the commencement of the Hearing. It appears that since Mr. Munns produced documents to Bank of America after the April 14th conference call, Bank of America effectively withdrew the motion to preclude as it did not request at the Hearing or otherwise that any further action be taken relative to the motion.

The Hearing proceeded against only AC Technology, Inc. and Mr. Munns. All claims and causes asserted by Bank of America against Mr. Byrd were dismissed with prejudice (each party to bear their own costs) pursuant to a Stipulation of Dismissal dated April 14, 2010 signed by Bank of America and Mr. Byrd and ordered by the Arbitrator on April 16, 2010.

At the Hearing the only witness from Bank of America to testify was Robert S. Cashion, a Senior Vice President in the Bank's workout group. Mr. Cashion testified that he was not involved with, and thus had no personal knowledge regarding, any of the events leading up to or surrounding the subject loan transaction whereby the Bank approved a $10 million credit facility and pursuant to the Credit Agreement and related loan documents, including the Munns Guaranty and Byrd Guaranty, loaned $5.5 million of that facility to AC Technology and MB Security. The latter was the entity used by Messrs. Munns and Byrd, using exclusively the loan proceeds received from the Bank, to acquire AC Technology from its then owners, Chris and Art Sands, on or about June 30, 2008.

Also testifying for the Bank was Todd A. Feuerman, a forensic accountant. After AC Technology had allegedly defaulted on its loan obligations to the Bank in late 2008, he conducted an investigation in March 2009 on behalf of the Bank regarding the financial viability of AC Technology and also the "integrity" of certain financial information (discussed herein) that had been provided to the Bank. The Bank also called Messrs. Byrd and Munns who provided testimony. Significantly, the Bank did not call, or seek to subpoena, the prior owners of AC Technology including Mr. Chris Sands who apparently resides in the Washington, D.C. area. The Bank similarly did not call Ms. Catherine Gaddis, its Controller both before and after the company was acquired by Messrs. Munns and Byrd. Ms. Gaddis apparently resides in Maryland. The Bank also did not call, or seek to subpoena, any other former official or

employee of the company or any other fact witnesses. Rather, as indicated, in attempting to prove its breach of contract, fraud and conversion claims, the Bank elected to rely solely on the testimony of Mr. Cashion, Mr. Feuerman, Messrs. Byrd and Munns and certain documentary evidence.

After the April 19th Hearing I received post-hearing briefs and reply briefs from counsel for the Parties. At the request of counsel for Claimants/Counter-Respondents, I also heard closing arguments in a June 22, 2010 conference call.

II. THE CLAIMS

1. COUNT I (Breach of Contract Against AC Technology)
   COUNT II (Action on Munns Guaranty)

Pursuant to Count I, Bank of America seeks to recover from AC Technology under the Credit Agreement and related loan documents the amounts claimed to be owed to it resulting from the alleged defaults by AC Technology. Pursuant to Count II, the Bank seeks to recover such claimed amounts from Mr. Munns under the Munns Guaranty. Although liability and amount was contested by AC Technology and Mr. Munns up to and during the Hearing, in their post-hearing brief at page 1, AC Technology and Mr. Munns conceded these claims to the Bank:

> In light of the evidence introduced during the evidentiary hearings conducted on April 19, 2010, Defendants' [sic] concede the breach of contract claims included in Counts I and II of the Plaintiff's Complaint.

At the Hearing Bank of America established, and I hereby find, that as of April 19, 2010, it was owed the amount of $5,061,643.57 from AC Technology and Mr. Munns, consisting of $4,686,915.75 in principal and $374,727.82 in interest. It also established, and I hereby find, that it is entitled including under Sections 6 and 7 of the Credit Agreement and under the Munns Guaranty to recover from AC Technology and Mr. Munns additional interest for the period after April 19, 2010 on the amounts owed pursuant to the interest provisions of the Credit Agreement and related loan documents and also its Enforcement Costs as defined in Section 1 of the Credit Agreement and provided for in Section 7.4 of the Credit Agreement. These Enforcement Costs include its reasonable attorneys' fees (discussed further herein).

Accordingly, Counts I and II are GRANTED consistent with the foregoing.

2. COUNT III (Action on Byrd Guaranty)

This claim is moot in view of the dismissal with prejudice of all claims against Mr. Byrd.

Accordingly, Count III is DENIED.

3. COUNT IV (Fraudulent Misrepresentation Against Messrs. Munns and Byrd)

As to Mr. Byrd, this claim is moot in view of the above-referenced dismissal with prejudice.

As to Mr. Munns, Bank of America claims that he committed actual fraud against the Bank in two ways by inducing the Bank to issue and administer the $10 million revolving line of credit. The first way claimed concerns the submission of financial information to the Bank regarding AC Tech's accounts receivable ("AR") before the subject line was then, based on that information, initially funded in the amount of $5.5 million in connection with the acquisition of AC Tech by Messrs. Byrd and Munns through MB Security. In particular, the Bank claims that Mr. Munns committed actual fraud because the Borrowing Base Certificate dated June 27, 2008 (the "BBC") submitted to the Bank included materially false information which caused the Bank to loan an amount significantly higher than the amount the Bank would have loaned if the BBC had not included the false information. According to the Bank, it was thereby fraudulently induced to loan the higher amount.

The BBC was prepared, signed and submitted by Mr. Byrd as Executive Vice President on behalf of MB Security. The Bank maintains, however, that Mr. Munns committed actual fraud based on his personal involvement in the submission including when he resent it to the Bank on June 29, 2008 and in his transmittal email described the BBC as "revised and carefully reviewed ... ." For the Bank, however, to prevail on this claim, it had to prove by clear and convincing evidence that Mr. Munns through his misrepresentations and other actions had intentionally and knowingly misled the Bank or acted in reckless disregard of the truth and that the Bank relied on those actions with resulting damage. The Bank, however, did not meet its burden of proof.

The Bank claimed that Mr. Munns had essentially created false AR information in the BBC which materially differed from certain AR information that had been provided by Mr. Sands to Messrs. Byrd and Munns prior to submission of the BBC to the Bank. The record evidence, however, confirms that information for the BBC was provided by Mr. Sands. There is no evidence that Mr. Munns created false information which was then included in the BBC or that he otherwise set out to intentionally mislead the Bank. As indicated, the Bank did not call or seek to subpoena Mr. Sands as a witness. In this regard, as consummation of the pending sale of AC Tech was dependent on the Bank's funding, Mr. Sands would not have been able to sell his business unless the BBC included sufficient AR's. He may, therefore, have provided AR information including in the "11th hour" which was not accurate or in accord with what would have qualified as an AR for purposes of the BBC. Moreover, the evidence confirms that Mr. Munns did not have access to the company's books and records. Simply stated, the Bank's largely circumstantial evidence regarding submission of the BBC and also later BBC's fell far short of meeting its heavy burden to prove actual fraud by Mr. Munns.

Bank of America also failed to meet its burden of proving by clear and convincing evidence that Mr. Munns committed actual fraud in a second way to induce the Bank to issue and administer the line of credit. The Bank claims that Mr. Munns, in contravention of provisions in the Credit Agreement, committed actual fraud by allowing accounts used as collateral for the Bank's loan to be encumbered and that this included certain actions involving Arrow Electronics both prior to approval of the line and funding (allowing a credit facility and personally

guaranteeing those receivables) and also after funding (allowing a subsequent security arrangement and for funds to be deposited in a "secret" lock box). The Bank did not assert a separate breach of contract claim in this proceeding relative to those actions.

Although the Bank claims that Mr. Munns intentionally concealed his actions prior to funding from the Bank, the record evidence indicates that Steve Britt, the attorney for MB Security and then AC Tech, was in contact with and had informed the involved Bank officials of this matter. In this regard, it should be noted that the Credit Agreement included provisions for possible "Permitted Liens." Although the Bank could have called or sought to subpoena Mr. Britt or the involved Bank officials as witnesses, it did not.

Regarding the claimed post-funding collateral violation, the credible record evidence confirms that the actions taken by AC Tech with Arrow were taken by Mr. Byrd, not by Mr. Munns, and that Mr. Munns only learned of them after the fact. There is no evidence that Mr. Munns set out to intentionally mislead the Bank. Moreover, as the claimed violation occurred after loan approval and funding, Virginia's Economic Loss Rule would in any event bar this portion of the claim.

Accordingly, Count IV is DENIED consistent with the foregoing.

4. COUNT V (Constructive Fraud Against Messrs. Munns and Byrd)

As to Mr. Byrd, this claim is moot in view of the above-referenced dismissal with prejudice.

As to Mr. Munns, the record supports a finding of constructive fraud. To prove constructive fraud, it is sufficient that the misrepresentation was made innocently or negligently. It need not be done knowingly and intentionally with an intent to mislead. Bank of America proved at the Hearing that certain AR information in the BBC, including for General Dynamics, was false. In his post-hearing brief, and during closing arguments, Mr. Munns did not dispute that the information in the BBC he provided to the Bank on June 29, 2008 was false and conceded at page 3 of his brief that "these representations were made innocently." He argued, however, that the Bank had not proven constructive fraud because it had not reasonably relied upon the misrepresentations.

The record evidence, however, including testimony from Mr. Cashion, a Bank official familiar with BBC's and their significance to the Bank's lending practices, as well as from Messrs. Byrd and Munns, confirms that although Bank of America, through a previous field audit and other due diligence, had acquired certain knowledge of AC Tech and its financial wherewithal, it reasonably relied on the false information in the BBC when it loaned AC Tech $5.5 million instead of what would have been a significantly lower amount. It is especially significant that Mr. Munns testified that he understood that the BBC was to serve as the foundation for the amount of the loan to be received from the Bank.

I find that the amounts awarded under Counts I and II adequately compensate the Bank for any and all losses resulting from the constructive fraud. I find no basis to award consequential or other damages including punitive damages.

Accordingly, Count V is GRANTED as to Mr. Munns consistent with the foregoing.

5. <u>COUNT VI (Conversion by Messrs. Munns and Byrd)</u>

As to Mr. Byrd, this claim is moot in view of the above-referenced dismissal with prejudice.

In its Complaint, Bank of America asserted that Mr. Munns improperly directed proceeds from the revolving line of credit to his personal account. At the hearing the Bank argued that when Mr. Munns opened various accounts for AC Tech at Cardinal Bank after the Bank had issued its default notice and had commenced collection activities, diverted accounts receivable into those accounts and then used certain funds in those accounts for personal purposes, he converted funds which had served as the Bank's collateral. Although the Bank had started to pursue various collection remedies it had in light of the default, the Cardinal Bank funds at issue were not the Bank's property. It did not own these funds. There also was no requirement for the funds to be held in trust on behalf of the Bank. I find, therefore, that Mr. Munns did not under applicable law engage in conversion. Further, Mr. Munns testified and there is other evidence that the funds were used by AC Tech for legitimate ongoing business purposes and that this included some compensation for himself and Mr. Byrd. Bank of America did not call or seek to subpoena any witnesses in an attempt to undermine this evidence.

Accordingly, Count VI is DENIED.

III.    <u>ATTORNEYS' FEES</u>

Consistent with the foregoing determinations, Bank of America may, within seven (7) days of issuance of this Interim Award, serve and submit to the Arbitrator evidence of its reasonable attorneys' fees and other Enforcement Costs as provided in the Credit Agreement. Claimants/Counter-Respondents may serve and submit any response within seven (7) days. A Final Award in this proceeding will then be forthcoming.

August 12, 2010

_____
Howard G. Slavit, Arbitrator