**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: **EARLE D. MUNNS** ) | Case No.: **11-10912-RGM** |
| ) | |
| **Debtor.** ) | **Chapter 7** |
| ) | |
| **BANK OF AMERICA, N.A.** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | Adversary No. 11-01255 |
| ) | |
| **EARLE D. MUNNS** ) | |
| ) | |
| **Defendant.** ) | |

**AFFIDAVIT OF ROBERT S. CASHION IN SUPPORT OF**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The undersigned, Robert S. Cashion, being duly sworn, testifies:

1. I am over 21 years old, am competent to testify as to the truth of the contents of this affidavit, and have personal knowledge of the facts stated herein.

2. I am a Senior Vice President of Bank of America, N.A. (the "Bank") and a custodian of records of the Bank.

3. In my capacity as Senior Vice President, I have knowledge of a $10 million revolving line of credit facility (the "Line of Credit") made available by the Bank to AC Technology, Inc. ("AC Tech") and MB Security Corporation ("MBSC") and the guaranties of the Line of Credit given by Earle D. Munns, Jr. ("Munns") and Michael A. Byrd ("Byrd"), and,

2394074

in my capacity as Senior Vice President, I have had occasion to review and familiarize myself with the records kept by the Bank relating to the Line of Credit.

4. The Bank makes memoranda, reports, records and data compilations of its business activities at or near the time of the act or events. The record is made by a person with knowledge of the act or from information transmitted by a person with knowledge of the event. The record is made and kept in the ordinary course of the Bank's regularly conducted business activity by persons whose duties include making the records. The regular practice of the Bank is to make and keep the record.

5. I have reviewed Exhibits A-J attached hereto and state that they are true and accurate copies of business records of the Bank.

6. Exhibit A is a true and accurate copy of a Credit and Security Agreement dated as of June 30, 2008 (the "Credit Agreement") by and among the Bank, AC Tech and MBSC. The Credit Agreement sets forth, among other things, certain terms and conditions of the Line of Credit, representations and warranties of AC Tech and MBSC (collectively, the "Borrowers") and affirmative and negative covenants of the Borrowers.

7. The Borrowers' obligation to repay advances on the Line of Credit was evidenced by a Revolving Loan Note dated June 30, 2008 (the "Note") in the original principal amount of $25 million made by the Borrowers payable to the order of the Bank.

8. Exhibit B is a true and accurate copy of a Continuing and Unconditional Guaranty dated June 30, 2008 given by Munns in favor of the Bank pursuant to which Munns unconditionally guaranteed full payment of all debts, liabilities and obligations of the Borrowers to the Bank, including all amounts owed by the Borrowers to the Bank under the Note.

2394074

2

9. Exhibit C is a true and accurate copy of an electronic mail message chain containing a June 17, 2008 message from Byrd to the Bank submitting as an attachment a copy of a letter of intent dated June 14, 2008 setting forth proposed terms for the acquisition by MBSC of 80% of the outstanding capital stock of AC Tech.

10. Based on my review of the Bank's records relating to the Line of Credit, the Bank has never received a fully executed copy of the definitive purchase agreement entered into by MBSC and the prior owners of AC Tech.

11. Exhibit D is a true and accurate copy of an electronic mail message chain containing a June 16, 2008 message from Munns to the Bank regarding, among other matters, the terms of MBSC's acquisition of AC Tech.

12. Exhibit E is a true and accurate copy of an electronic mail message chain containing a June 25, 2008 message from Byrd to the Bank submitting as an attachment a copy of the biographies of AC Tech's management team.

13. Exhibit F is a true and accurate copy of a June 27, 2008 electronic mail message from Byrd to the Bank submitting as attachments a Monthly Borrowing Base Certificate dated June 27, 2008, a schedule of ineligible accounts receivable and an AC Tech A/R Aging Summary as of June 27, 2008 (the "June A/R Aging Summary").

14. Exhibit G is a true and accurate copy of an electronic mail message chain containing a June 29, 2008 message from Munns to the Bank submitting as attachments a Monthly Borrowing Base Certificate dated June 27, 2008, a schedule of ineligible accounts receivable and the June A/R Aging Summary.

15. Exhibit H is a true and accurate copy of a June 30, 2008 electronic mail message from Byrd to the Bank submitting as attachments a Monthly Borrowing Base Certificate dated

2394074

3

June 27, 2008 (the "Final June Borrowing Base Certificate") and a schedule of ineligible accounts receivable.

16. Exhibit I is a true and accurate copy of an electronic mail message chain containing a June 30, 2008 message from Munns to the Bank responding to an earlier inquiry sent by Jessica Tencza of the Bank to Munns, Byrd and J. Stephen Britt.

17. If Munns had disclosed to the Bank that the actual total amount of AC Tech's accounts receivable, as of June 30, 2008, was over $3 million less than the total accounts receivable listed on the June A/R Aging Summary and on the Final June Borrowing Base Certificate, the Bank would not have closed on the Line of Credit on June 30, 2008.

18. Exhibit J is a true and accurate copy of a Notice of Default and Reservation of Rights dated December 17, 2008 sent by counsel for the Bank to counsel for AC Tech.

I, Robert S. Cashion, do declare or affirm under the penalty of perjury that the contents of the foregoing affidavit are true.

Dated: October 13, 2011

Robert S. Cashion
Senior Vice President
Bank of America, N.A.

2394074

4